UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
------------------------------------------------------------  x
SEAN LAWRENCE,                                                 :
                                                              :
                              Plaintiff,                       :
                                                              :          INITIAL REVIEW
            -against-                                          :          ORDER RE:
                                                              :          COMPLAINT
ZACK, et al.,                                                 :
                                                              :          24-CV-1142 (VDO)
                              Defendants.                      :
------------------------------------------------------------  x
```

**VERNON D. OLIVER**, United States District Judge:

Plaintiff Sean Lawrence, an unsentenced inmate incarcerated at Corrigan Correctional Center[1], filed this case *pro se* pursuant to 42 U.S.C. § 1983 against ten defendants, Intelligence Officer Zack, Lieutenant Champion, Lieutenant Dawson, Disciplinary Hearing Officer Bolduc, Captain/SRG Coordinator Papoosha, District Administrator Craig Washington, Warden Dougherty, Warden Brunelle, Lieutenant Bowers, and Director of Security Antonio Santiago. All Defendants are named in their individual and official capacities. Plaintiff alleges that Defendants have violated his constitutional rights by placing him in segregation in the Security Risk Group ("SRG") Program without affording him due process based on social media posts.

---

[1] Although Plaintiff states in the Amended Complaint that he is a pretrial detainee and the Department of Correction website lists Plaintiff as an unsentenced inmate, the website also states that he was sentenced on January 17, 2024. As the record also indicates that Plaintiff was last admitted to custody on December 28, 2023 and the Connecticut Judicial Branch website indicates that Plaintiff is currently awaiting a plea on a murder charge, the offense listed on the Department of Correction website, the Court assumes this purported sentencing date is incorrect. *See* Department of Correction Inmate Information Search, http://ctinmateinfo.state.ct.us/detailsupv/asp?id_inmt_num=355226 (last visited August 6, 2024) *and* Connecticut Judicial Branch Pending Criminal Cases Search Detail, www.jud2.ct.gov/CaseDetail.aspx?source=Pending&Key=92341fe-67cc-4012-9008-4c421da201e6 (last visited August 6, 2024). The Court may take judicial notice of these websites. *See, e.g., Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006); *Westry v. City of Waterbury*, No. 3:22cv686(MPS), 2023 WL 3259878, at *3 & n.2 (D. Conn. May 4, 2023) (taking judicial notice of information on Connecticut Judicial Branch's website); *United States v. Rivera*, 466 F. Supp. 3d 310, 313 (D. Conn. 2020) (taking judicial notice of BOP inmate locator information); *Ligon v. Dougherty*, 208 F. Supp. 2d 384, 386 (E.D.N.Y. 2002) (taking judicial notice of state prison website inmate locator information).

He seeks damages and injunctive relief from Defendants in their individual and official capacities.

The Prison Litigation Reform Act requires that federal courts review complaints brought by prisoners seeking relief against a government entity or officer or employee of a government entity. 28 U.S.C. § 1915A(a). Upon review, the Court must dismiss the complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915(b). The Court has thoroughly reviewed all factual allegations in the amended complaint and conducted an initial review of the allegations therein pursuant to 28 U.S.C. § 1915A.

## I.    FACTUAL BACKGROUND

On December 27, 2023, Plaintiff was taken into custody and confined at New Haven Correctional Center ("NHCC") as a pretrial detainee. ECF No. 11 ¶ 11. On January 22, 2024, Defendant Zack informed Plaintiff that he had searched several social media pages that he believed belonged to Plaintiff and found Crips gang identifiers. *Id.* ¶¶ 13-15.

Intelligence Officer Zack would not tell Plaintiff how he accessed the pages without Plaintiff's password or provide a reason for his search. *Id.* ¶¶ 16-17. Officer Zack admitted that Plaintiff had done nothing while incarcerated to cause him to be suspected of gang activity. *Id.* ¶¶ 18, 23-24. Officer Zack also admitted that he did not have a warrant or probable cause to search Plaintiff's Facebook account but stated that the Department of Correction did not need a warrant or probable cause. *Id.* ¶ 19. Officer Zack said that Plaintiff would be placed in restrictive housing pending a disciplinary report for SRG affiliation. *Id.* ¶ 21.

Lieutenant Champion supervised Plaintiff's escort to the restrictive housing unit. *Id.* ¶

25. Plaintiff told her that he was being accused of gang membership based on social media posts made before he was incarcerated; he denied gang membership and stated that he had engaged in no suspicious activity and had violated no rules since admission to custody. *Id.* ¶¶ 26-27.

Plaintiff was handcuffed, escorted to the restrictive housing unit, strip searched, and placed in a cell. *Id.* ¶¶ 28-29. The cell was covered with feces, urine, vomit, saliva, and rotting food. *Id.* ¶ 30. Plaintiff was denied cleaning supplies, his property, and his commissary items. *Id.* ¶¶ 31-32. He was denied immediate medical and mental health attention and was told to submit requests for treatment. *Id.* ¶¶ 33-34. In the SRG unit, Plaintiff was allowed only three fifteen-minute phone calls per week and one hour of recreation each day. *Id.* ¶ 39. The shower in the NHCC restrictive housing unit would "back up with excrement, blood, and other foreign bodily fluids" causing Plaintiff to develop a severe foot fungus. *Id.* ¶ 41.

On January 25, 2024, Plaintiff attended an SRG designation hearing with Lieutenant Dawson and Hearing Officer Bolduc. *Id.* ¶ 35. Plaintiff alleges that, before the hearing, Captain Papoosha, Officer Zack, Lieutenant Champion, Lieutenant Dawson, Warden Brunelle, and Officer Bolduc determined that he would be found guilty, designated an SRG Crips member, and placed in the SRG segregation unit. *Id.* ¶ 36. Plaintiff was not permitted to refute the allegations against him to an impartial officer. *Id.* ¶ 37. He alleges that Lieutenant Dawson and Officer Bolduc "coerced and forced" him to plead guilty by telling him the sanctions could be more severe if he denied the allegations. *Id.* ¶ 38. Plaintiff asked Warden Brunelle, Lieutenant Champion, Lieutenant Dawson, Officer Zack, and Officer Bolduc to amend the decision and his sanctions, but they refused. *Id.* ¶ 40.

Later that day, Plaintiff was transferred to Corrigan Correctional Center ("Corrigan") and placed in the SRG unit. *Id.* ¶ 42. The unit counselor told Plaintiff that before beginning

phase 3 of the SRG Program, he must complete a 90-day probationary period and that each phase of the program lasted about two months. *Id.* ¶ 43.

Plaintiff's first cell had faulty plumbing. *Id.* ¶ 45. When the toilet and sink overflowed, Plaintiff was moved to another cell in the unit. *Id.* The new cell was located next to a frequently used door that would slam and bang all day and night disturbing Plaintiff's mental health and disrupting his sleep. *Id.* ¶ 46. After two weeks, Plaintiff was moved to a different cell. *Id.* ¶ 47.

On January 30, 2024, Plaintiff filed an appeal of his SRG designation. *Id.* ¶ 48. District Administrator Washington upheld the designation. *Id.* ¶¶ 55-56.

Plaintiff repeatedly told the unit manager, Lieutenant Bowers, and Warden Dougherty that he was not a gang member and had engaged in no gang activity since his admission to custody. *Id.* ¶¶ 49, 51. Plaintiff also told Lieutenant Bowers that he feared for his safety and being held in the SRG unit was involuntary servitude. *Id.* ¶ 50. Neither official took action to correct the situation. *Id.* ¶¶ 50, 52.

Plaintiff alleges that he is threatened and extorted daily by members of rival gangs and is fearful of his safety. *Id.* ¶ 60. He also alleges that he is threatened and extorted by Crips members for falsely claiming and denouncing affiliation with the Crips. *Id.* ¶ 61. He must share a cell with a member of a rival gang. *Id.* ¶ 77.

Plaintiff is denied congregate religious services and library access afforded to general population inmates. *Id.* ¶¶ 62-63. He must shower and recreate with violent gang members and convicted felons. *Id.* ¶¶ 64, 76. He encountered difficulties communicating with his mother whose health was deteriorating and who passed away in May 2024. *Id.* ¶¶ 65-67. Plaintiff was not allowed to attend her funeral because of his SRG designation. *Id.* ¶ 68. Plaintiff is denied job opportunities outside the SRG unit and E-messaging on the Securus tablet. *Id.* ¶¶ 69, 71. He

is permitted three fifteen-minute phone calls per day instead of the six calls permitted to general population inmates. *Id.* ¶ 70. Plaintiff also is subjected to a pat-down body search every time he leaves his cell. *Id.* ¶ 72.

## II.   **LEGAL STANDARD**

Under 28 U.S.C. § 1915A, courts must review prisoner civil complaints in which a prisoner seeks redress from a government entity and dismiss any portion that "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b)(1)-(2). Although highly detailed allegations are not required, the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. This plausibility standard is not a "probability requirement" but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully." *Id.*

In undertaking this analysis, the court must "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted). However, the court is "not bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions," *id.*, and "a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678.

With respect to *pro se* litigants, it is well-established that "[p]ro se submissions are

reviewed with special solicitude, and 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Matheson v. Deutsche Bank Nat'l Tr. Co.*, 706 F. App'x 24, 26 (2d Cir. 2017) (per curiam) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006)). However, *pro se* litigants are still required to comply with Rule 8 of the Federal Rules of Civil Procedure. *See, e.g., Wynder v. McMahon*, 360 F.3d 73, 79 n.11 (2d Cir. 2004) ("[T]he basic requirements of Rule 8 apply to self-represented and counseled plaintiffs alike."). Rule 8 requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and provide "fair notice of what the ... claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (alteration in original). A statement of claim that is not short and direct places "an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage." *Harden v. Doe*, No. 19-CV-3839(CM), 2019 WL 2578157, at *2 (S.D.N.Y. June 24, 2019) (quoting *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988)) (internal quotation marks and citation omitted).

## III.    <u>DISCUSSION</u>

Plaintiff contends that Defendants' actions violated his rights under the First, Fourth, Fifth, Eighth, Thirteenth, and Fourteenth Amendments of the United States Constitution and Article first, sections 4, 5, 7, 8, 9, and 20 of the Connecticut Constitution and constituted the state torts of negligence and intentional infliction of emotional distress.

### A.    **Official Capacity Damages Claims and Individual Capacity Injunctive Relief Claims**

Plaintiff seeks damages against all defendants but does not state whether he seeks those damages from them in their individual or official capacities. To the extent Plaintiff seeks

damages from Defendants, who are all state employees, in their official capacities, such claims are dismissed as barred by the Eleventh Amendment. *See, e.g., Kentucky v. Graham*, 473 U.S. 159, 169 (1985). All official capacity damages claims are dismissed pursuant to 28 U.S.C. § 1915A(b)(2).

Plaintiff also does not specify the capacity in which he seeks injunctive relief from Defendants. Claims for prospective relief may be asserted against a state official only in the official's official capacity. *See Patterson v. Lichtenstein*, No. 3:18-cv-2130(MPS), 2020 WL 837359, at *2 (D. Conn. Feb. 20, 2020). All claims for injunctive relief against Defendants in their individual capacities are dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

Thus, the Court considers the claims for money damages against Defendants in their individual capacities and the claims for injunctive relief against Defendants in their official capacities.

### B.    First Amendment

Plaintiff contends that he was designated an SRG member based on evidence Officer Zack obtained from his social media account. He argues that this violates his First Amendment rights. Because Plaintiff alleges that he was punished by Defendants for exercising his First Amendment right to freedom of speech, *i.e.*, the right to post on social media, the Court considers this claim as a First Amendment retaliation claim. *See Caves v. Payne*, No. 3:20-CV-15(KAD), 2020 WL 1676916, at *3 (D. Conn. Apr. 6, 2020) (considering First Amendment retaliation claim based on prisoner's allegations that he was placed in SRG Program because of social media posts).

To state a cognizable First Amendment retaliation claim, Plaintiff must allege "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against

the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Burns v. Martuscello*, 890 F.3d 77, 84 (2d Cir. 2018) (quoting *Dolan v. Connolly*, 794 F.3d 290, 294 (2d Cir. 2015)).

The Supreme Court has recognized a First Amendment interest in posting on social media. *See Packingham v. North Carolina*, 582 U.S. 98, 108 (2017) ("to foreclose access to social media altogether is to prevent the user from engaging in the legitimate exercise of First Amendment rights"). Thus, Plaintiff's social media posts constitute protected speech.

The second requirement is that Defendants took adverse action against Plaintiff. The Second Circuit has held that "only retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action." *Wrobel v. County of Erie*, 692 F.3d 22, 31 (2d Cir. 2012). Whether a particular action is considered adverse depends on the circumstances. *Id.* Here, Plaintiff alleges that the conditions in the SRG Program are harsher and more restrictive that in general population. The Court concludes that he has plausibly alleged that he was subjected to adverse action.

The final requirement is that the adverse action was caused by Plaintiff's social media posts. The allegations here are nearly identical to those in *Caves*. Both inmates contend that their placement in the SRG Program was based solely on their social media posts. However, the court in *Caves* found that this allegation was insufficient to establish the required causal connection. 2020 WL 1676916, at *4. The court explained that the inmate's designation to the SRG Program was not made to punish him for posting on social medial or to deter him from doing so in the future. The social media post was just the evidence used to support his designation. The court reasoned that using the social media posts was no different than if the plaintiff had announced upon arrival at a correctional facility that he was a gang member, and

the defendants then used that statement to designate him as an SRG member. *Id.*; *see also Robinson v. Doe 1*, No. 3:23-cv-1631(SVN), 2024 WL 1639539, at *3 (D. Conn. Apr. 16, 2024) ("Several recent decisions in this district have held that allegations that prison officials relied on social media posts to determine whether an inmate was an SRG member do not satisfy the causal requirement to state a valid First Amendment retaliation claim." (citing cases)). This Court agrees that Plaintiff fails to establish the required causal connection to support a First Amendment retaliation claim. Accordingly, the First Amendment claim is dismissed pursuant to 28 U.S.C. § 1915A(b)(1). The Court will, however, consider whether the evidence was sufficient to support Plaintiff's designation in conjunction with his Fourteenth Amendment due process claim.

### C. Fourth Amendment

Plaintiff alleges that Officer Zack conceded that he had no warrant or probable cause to access Plaintiff's social media account yet did so in violation of Plaintiff's Fourth Amendment rights and used information from the account to support the SRG designation.

Cases distinguishing Fourth Amendment mandates for reasonable searches for sentenced prisoners and pretrial detainees generally focus on body cavity or strip searches. *See, e.g., Florence v. Board of Chosen Freeholders of Cnty. of Burlington*, 566 U.S. 318 (2012); *LeTray v. City of Watertown*, No. 5:20-CV-1194(FJS/WD), 2024 WL 1107903, at *4 (N.D.N.Y. Feb. 22, 2024). In *United States v. Boyce*, No. CR 2014-00029, 2015 WL 856943, at *5 (D.V.I. Feb. 26, 2015), the court found no Fourth Amendment violation where prison officials seized and searched the cell phone of a pretrial detainee that was found in his cell. That decision, however, was based on the fact that prisoners and pretrial detainees have no expectation of privacy in their cells. *Id.*; *see also Hudson v. Palmer*, 468 U.S. 517, 526 (1984)

("the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell"); *United States v. Johnson*, 875 F.3d 1265, 1276 (9th Cir. 2017) (plaintiff "had reduced privacy interests in his phone given his parolee status").

Here, Plaintiff does not allege that Officer Zack found and searched his cell phone. Rather, he alleges that Officer Zack accessed his password-protected social media account without a warrant or probable cause. Research reveals no cases finding a Fourth Amendment violation where prison officials accessed the social media account of an inmate or a pretrial detainee. However, the Court is reluctant to dismiss this claim without a response from Defendants addressing, *inter alia*, why Officer Zack stated that he did not need a warrant or probable cause to access the account. Therefore, Plaintiff's Fourth Amendment claim will proceed against Officer Zack for further development of the record.

### D.    Fifth Amendment

The Fifth Amendment pertains to criminal charges and prohibits the federal government from violating a person's due process rights. *See Public Utilities Comm'n v. Pollak*, 343 U.S. 451, 461 (1952); *Birdsall v. City of Hartford*, 249 F. Supp. 2d 163, 170 (D. Conn. 2003). As it applies only to the actions of the federal government, the Fifth Amendment Due Process Clause applies only to federal inmates. *See Jackson v. Walker*, No. 3:22-CV-1951(OAW), 2022 WL 16573562, at *3 (D. Conn. Nov. 1, 2022) (citing *Caiozzo v. Koreman*, 581 F.3d 63, 69 & n.3 (2d Cir. 2009)). As Plaintiff is a state inmate, the Fifth Amendment is inapplicable. Any Fifth Amendment claim is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

### E.    Eighth Amendment

Plaintiff asserts claims for violation of his rights under the Eighth Amendment. However, the Eighth Amendment protects only sentenced inmates. *See Whitley v. Albers*, 475

U.S. 312, 318 (1976) (Eighth Amendment protections apply only after conviction). As Plaintiff is a pretrial detainee, his claims are cognizable under the Fourteenth Amendment, not the Eighth Amendment. Any Eighth Amendment claims are dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

### F.      Thirteenth Amendment

Plaintiff contends that forced participation in the SRG Program and classes/programs within it subjects him to slavery and involuntary servitude because he has not been convicted of a crime.

The Thirteenth Amendment states in pertinent part that "[n]either slavery nor involuntary servitude, except as punishment for a crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction." U.S. Const. amend. XIII, § 1. The Supreme Court has noted that "[w]hile the general spirit of the phrase 'involuntary servitude' is easily comprehended, the exact range of conditions it prohibits is harder to define." *United States v. Kozminski*, 487 U.S. 931, 942 (1988). However, to state a Thirteenth Amendment claim, "a plaintiff must demonstrate that he has been subjected to 'compulsory labor akin to African slavery which in practical operation would tend to produce like undesirable results.'" *Ford v. Nassau Cnty. Executive*, 41 F. Supp. 2d 392, 401 (E.D.N.Y. 1999) (quoting *Butler v. Perry*, 240 U.S. 328, 332 (1916)).

The Thirteenth Amendment applies to institutions housing pretrial detainees. *McGarry v. Pallito*, 687 F.3d 505, 511 (2d Cir. 2012). Court decisions evaluate the coercion imposed on work requirements to determine whether the inmate states a Thirteenth Amendment violation. For example, in *McGarry*, the Second Circuit determined that the plaintiff's allegation that his work in the prison laundry was compelled by use and threats of legal and physical coercion

including being sent to the "hole" and subjected to 23 hour-per-day administrative confinement and shackles if he refused to work stated a Thirteenth Amendment violation. *Id.* However, in *Ford*, the court held that requiring a pretrial detainee to choose between distributing food to other inmates without pay or being confined in segregation did not violate the Thirteenth Amendment. 41 F. Supp. 2d at 397-98.

Plaintiff alleges only that he was assigned to the SRG Program and was required to attend classes or programs. He was not forced to work. In *Muhmmaud v. Murphy*, 632 F. Supp. 2d 171 (D. Conn. 2009), another judge in this district held that requiring an inmate to participate in the chronic discipline program was not work and does not constitute involuntary servitude. *Id.* at 176. There are no reported cases holding that a classification decision violated the Thirteenth Amendment. Thus, there is no factual basis for a Thirteenth Amendment claim. Any Thirteenth Amendment claim is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

**G.    Fourteenth Amendment**

Plaintiff includes claims for violation of his right to procedural due process in connection with the hearing and substantive due process based on his transfer to the SRG Program and housing unit.

**1.    Procedural Due Process**

Plaintiff's procedural due process claim is based on alleged deficiencies at the hearing where he was classified as an SRG member and transferred to the SRG Program. He alleges that Defendants agreed, prior to the hearing, that he would be found guilty of the charge even though he had done nothing while incarcerated to suggest that he was an SRG member.

Plaintiff alleges that he was issued a disciplinary report for SRG membership but then describes what appears to be a classification hearing. Different procedural protections apply

depending on the nature of the hearing. *Bolden v. Alston*, 810 F.2d 353, 357 (2d Cir. 1987). Disciplinary hearings required the protections set forth in *Wolff v. McDonnell*, 418 U.S. 539 (1974), which include "advance written notice of the charges against [the inmate]; a hearing affording him a reasonable opportunity to call witnesses and present documentary evidence; a fair and impartial hearing officer; and a written statement of the disposition, including the evidence relied upon and the reasons for the disciplinary actions taken." *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004) (citing *Wolff*, 418 U.S. at 563-67). At an administrative, or classification, hearing, however, a pretrial detainee "must merely receive some notice of the charges against him and an opportunity to present his views [either orally or in writing] to the prison official charged with deciding whether to transfer him to administrative segregation." *Hewitt v. Helms*, 459 U.S. 460, 476 (1983). In addition, due process requires that the decision be supported by "some evidence." *Superintendent Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985). If a pretrial detainee's placement in restrictive housing is reasonably related to a legitimate governmental purpose, it is not considered punitive. *Almighty Supreme Being Born Allah v. Milling*, 876 F.3d 48, 55 (2d Cir. 2017).

While an impartial hearing officer is a due process requirement for a disciplinary hearing, it is not included in the due process protections for an administrative hearing. Based on the allegations, the Court cannot determine whether Plaintiff's hearing was a disciplinary hearing or a classification hearing and cannot, therefore, determine what procedural protections were warranted. Nor can the Court discern on initial review whether a social media post from some time prior to incarceration, without any actions while incarcerated, constitutes some evidence to support the SRG finding. Plaintiff's Fourteenth Amendment procedural due process claim will proceed against Defendants Brunelle, Washington, Champion, Dawson, Zack, and

Bolduc for further development of the record.

### 2.    Substantive Due Process

Plaintiff argues that the conditions in the SRG Program are punitive and violate his Fourteenth Amendment right to substantive due process. Pretrial detainees have a liberty interest in not being punished by the conditions of their confinement. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979) ("Under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law."). "A pretrial detainee may not be punished at all under the Fourteenth Amendment, whether ... by deliberate indifference to conditions of confinement, or otherwise." *Darnell v. Pineiro*, 849 F.3d 17, 35 (2d Cir. 2017). A pretrial detainee may state a substantive due process claim in two ways, by showing that the defendants were deliberately indifferent to the conditions of his confinement or by showing that the conditions were punitive. *Id*. at 34 n.12.

Although, a pretrial detainee's confinement in  restrictive housing is not considered punitive if that confinement is reasonably related to a legitimate governmental purpose, *Allah*, 876 F.3d at 55, the Second Circuit has stated that prison officials violate substantive due process if they "adhere[] reflexively to a practice" to place a pretrial detainee in administrative segregation without "individualized consideration of [the pretrial detainee's] circumstances" and "regardless of [the pretrial detainee's] actual threat, if any, to institutional security." *Id*. at 57. Plaintiff alleges that the conditions in the SRG Program are more restrictive than in general population in that he is permitted only three, rather than six, phone calls per day; he was not permitted to attend his mother's funeral; there is faulty plumbing in the showers; and he must be searched whenever he leaves his cell. He also states that he is constantly threatened by other gang members in the unit. Plaintiff describes unsanitary conditions in his first cell and constant

banging from the door near his second cell. However, he no longer is confined in either cell. He also alleges that the conditions in restrictive housing at NHCC were harsh and punitive.

Plaintiff alleges that he violated no prison rules and committed no actions suggesting that he was a gang member during his incarceration. These allegations raise a question whether Defendants gave the required individualized consideration or merely classified him by rote. *See Wilson v. Santiago*, No. 3:19-cv-01807(JAM), 2020 WL 5947322, at *4 (D. Conn. Oct. 7, 2020) (even if pretrial detainee properly placed in segregation, he may state substantive due process claims if conditions are not reasonably related to legitimate governmental purpose, such as institutional security) (citation omitted). Other courts have questioned whether conditions similar to those alleged are reasonably related to legitimate government purposes. *See Allah*, 876 F.3d at 58 (concluding that conditions of administrative segregation including limitations on phone calls and mail and denial of contact visits and television access not reasonably related to legitimate governmental objectives); *Vanterpool v. Harris*, No. 3:20-cv-140(JAM), 2020 WL 13017257, at *5 (D. Conn. Sept. 4, 2020) ("[I]t is not evident how conditions like limiting telephone calls and commissary spending [and] limiting access to programming ... enhance prison safety or security."). While it is problematic for Plaintiff's substantive due process claim that Defendant Zack informed Plaintiff that gang identifiers were found on Plaintiff's social media pages, at this stage, the Court is unable to conclude that it will be impossible for Plaintiff to prove the claim. Plaintiff has alleged facts plausibly showing that the conditions were punitive.

He also plausibly states a claim for deliberate indifference to his conditions of confinement. To state a deliberate indifference claim, Plaintiff must allege facts showing that the challenged "conditions, either alone or in combination, posed an unreasonable risk of

serious damage to his health, which included the risk of serious damage to physical and mental soundness." *Darnell*, 849 F.3d at 30 (citation omitted).  The court considers the "duration and severity" of the conditions and evaluated them "in light of contemporary standards of decency." *Id.* The second requirement to state a deliberate indifference claim is allegations showing that the defendants "acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Id*. at 35.

Plaintiff alleges that Defendants subjected him to these conditions because they believed him to be a gang member. He further alleges that he told Lieutenant Bowers that he feared for his safety and told many Defendants that he was not a gang member and that his confinement was affecting his mental state. The Court considers these allegations, on initial review, to plausibly allege intentional conduct or, at a minimum, reckless failure to act. *See Caves*, 2020 WL 1676916, at *5 (allegations that defendants intentionally subjected plaintiff to alleged conditions because they assumed he was an SRG member and defendants were aware of assault by inmates in unit and conditions that affected his mental and emotional state were sufficient to plausibly allege deliberate indifference substantive due process claim).

The Court considers Plaintiff's allegations sufficient to state a plausible substantive due process claim against Defendants Warden Dougherty, Lieutenant Bowers, Captain Papoosha, and Director Santiago, the defendants alleged to work at Corrigan, where the SRG Program is located, or to supervise the program, and Defendants Zack and Champion, the defendant who placed Plaintiff in restrictive housing at NHCC.

**H.      State Constitutional Provisions**

Plaintiff contends that Defendants' actions violated his rights under Article first, sections 4, 5, 8, 9, and 20 of the Connecticut Constitution. In *Binette v. Sabo*, 244 Conn. 23, 26, 710 A.2d 688 (1998), the Connecticut Supreme Court recognized a private right of action for damages under Article first, section 9 of the Connecticut Constitution for illegal search and seizure of a private home by police officers. The court emphasized, however, that the decision to recognize a private right of action in that case, "does not mean that a constitutional cause of action exists for every violation of our state constitution." *Id*. at 47. The decision to recognize such causes of action would be made on a case-by-case basis after "a multifactor analysis." *Id*. at 48. The Connecticut Supreme Court has not extended the private right of action under Article first, section 9 to cases filed by prisoners. *See Silvera v. Connecticut Dep't of Corr*., 726 F. Supp. 2d 183, 199-200 (D. Conn. 2010) (declining to exercise supplemental jurisdiction over claim under Article first, section 9 for forcing pretrial detainee to share cell with convicted inmate and providing inadequate medical care as novel and undeveloped issue of state law).

Nor has the Connecticut Supreme Court engaged in such analysis or found a private right of action in any of the other state constitutional provisions cited by Plaintiff. Thus, this Court declines to exercise supplemental jurisdiction over the state constitutional claims. *See, e.g., Lopez v. Smiley*, 375 F. Supp. 2d 19, 23-25 (D. Conn. 2005) (declining to recognize private right of action under various provisions of Connecticut Constitution, including Article first, sections 4, 5, 7, 8, 9, 10, 14, and deferring to state courts to recognize such a cause of action in the first instance); *Torres v. Armstrong*, No. CV990427057S, 2001 WL 1178581, at *5-7 (Conn. Super. Ct. Sept. 6, 2001) (refusing to recognize prisoner's claim for money damages and injunctive relief brought under Article first, sections 1, 4, 8, 9, 14, and 20 of the Connecticut

Constitution).

## IV.   <u>CONCLUSION</u>

All claims for violation of rights under the First, Fifth, Eighth, and Thirteenth Amendments and all claims for damages against Defendants in their official capacities and injunctive relief in their individual capacities are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b). As the Court concludes that Plaintiff can allege no facts to correct the deficiencies in these claims, the Court does not afford Plaintiff the opportunity to file a Second Amended Complaint.

The Court declines to exercise supplemental jurisdiction over Plaintiff's state constitutional claims.

The case will proceed on the Fourth Amendment claim against Defendant Zack, the Fourteenth Amendment procedural due process claim against Defendants Brunelle, Washington, Champion, Dawson, Zack, and Bolduc, and the Fourteenth Amendment substantive due process claim against Defendants Zack, Champion, Dougherty, Bowers, Papoosha, and Santiago. Plaintiff's state law claims for negligence and intentional infliction of emotional distress also will proceed at this time.

The Court enters the following additional orders.

(1)      **The Clerk shall** contact the Department of Correction Office of Legal Affairs to ascertain current service addresses for Defendants Zack, Brunelle, Washington, Champion, Dawson, Bolduc, Dougherty, Bowers, Papoosha, and Santiago, mail a waiver of service of process request packet containing the Amended Complaint and this Order to each defendant at the address provided within **twenty-one (21) days** of this Order, and report to the court on the status of the waiver request on the thirty-fifth day after mailing. If any defendant fails to return

the waiver request, the Clerk shall arrange for in-person service by the U.S. Marshals Service on the defendant in his individual capacity and the defendant shall be required to pay the cost of such service.

(2)     **The Clerk shall** arrange for service of summons and a copy of the Amended Complaint and this Order on Defendants in their official capacities at the Office of the Attorney General, 165 Capitol Avenue, Hartford, CT 06106 by **September 30, 2024**.

(3)     **The Clerk shall** send Plaintiff a copy of this Order.

(4)     **The Clerk shall** send a courtesy copy of the Complaint and this Order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

(5)     Defendants shall file their response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the waiver forms are sent. If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claim recited above. They also may include all additional defenses permitted by the Federal Rules.

(6)     Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed by **April 7, 2025**. Discovery requests need not be filed with the court.

(7)     All motions for summary judgment shall be filed by **May 7, 2025**.

(8)     Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(9)     If Plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)(2) provides that he MUST notify the court. Failure to do so can result in the dismissal of the case. Plaintiff must give notice of a new address even if he is incarcerated. Plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice. It is not enough to

just put the new address on a letter without indicating that it is a new address. If Plaintiff has

more than one pending case, he should indicate all the case numbers in the notification of change

of address. Plaintiff should also notify Defendants or the attorney for Defendants of his new

address.

(10)    Plaintiff shall utilize the Prisoner Efiling Program when filing documents with the

court. Plaintiff is advised that the Program may be used only to file documents with the court.

As local court rules provide that discovery requests are not filed with the court, discovery

requests must be served on Defendants' counsel by regular mail.

(11)    The Clerk shall immediately enter the District of Connecticut Standing Order Re:

Initial Discovery Disclosures concerning cases initiated by self-represented inmates and shall

send a copy to Plaintiff.

**SO ORDERED.**

Hartford, Connecticut
September 9, 2024

                                     /s/Vernon D. Oliver_____
                                     VERNON D. OLIVER
                                     United States District Judge